UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON DOWDY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>REGISTERED NURSE NAM, et al.,<br><br>　　　　Defendants. | Case No. 5:21-cv-05609 EJD (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket No. 32) |

Plaintiff, a state prisoner proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against prison officials at the Salinas Valley State Prison ("SVSP"). Dkt. No. 1.[1] The Court found the complaint stated cognizable claims against SVSP nurses Nam Tran, Frances Ssempebwa,[2] and P. Guillen[3] for violation of Plaintiff's constitutional right to adequate medical care under the Eighth Amendment. Dkt. No. 8 at 2. The Court ordered service of the complaint on Defendants and ordered Defendants to file a motion for summary judgment or other dispositive motion. Id. at 3. Before Defendants filed their motion for summary judgment, Plaintiff's claim against nurse Tran was dismissed based on counsel's formal suggestion of death. Dkt. No. 31, citing Dkt. Nos. 25, 25-1.

---

[1] All page references herein are to the Docket pages shown in the header to each document and brief cited, unless otherwise indicated.

[2] Plaintiff identified this Defendant as "Frances," Dkt. No. 1 at 6-7 ¶ 18, and the Court accordingly ordered service of the complaint on "Frances," Dkt. No. 8 at 2. The parties now agree that this Defendant is Francis Ssempebwa. Dkt. No. 32 at 5; see also Dkt. No. 32-10 at 12 (at deposition, Plaintiff uses male pronouns for nurse Ssempebwa).

[3] In his declaration, this Defendant identifies him/herself as "P. Guillen." Dkt. No. 32-3.

Defendants[4] filed a motion for summary judgment on the grounds that Plaintiff received constitutionally adequate medical care, they are entitled to qualified immunity, and Plaintiff's claim for damages against Defendants in their official capacity are barred by the Eleventh Amendment. Dkt. No. 32 at 6. Plaintiff filed opposition. Dkt. No. 43. Defendants replied. Dkt. No. 45.

For the reasons set forth below, Defendants' motion for summary judgment on the grounds that they were not deliberately indifferent to Plaintiff's serious medical needs is GRANTED.

## DISCUSSION

I. **Statement of Facts**[5] [6]

   A. **Overview**

On May 17, 2020, Plaintiff injured his right hand by slamming it down on a concrete table during a card game. Dkt. No. 32-10 at 8-9. The next morning, May 18, 2020, the hand was swollen and painful. Id. at 7. Plaintiff sought and began receiving medical care the same day, May 18, 2020. Dkt. No. 32-1 at 3 ¶ 9; Dkt. No. 32-10 at 9-10; id. at 10 (Plaintiff testified that when he informed prison staff of his condition "[s]he immediately called medical. And I was in medical five minutes later, ten minutes later."). Plaintiff's complaint incorrectly alleges this date as May 8, 2020. Dkt. No. 1 at 5. Plaintiff agreed in his deposition that May 18, 2020 was the day he first sought medical attention for the injury he had sustained the previous day. Dkt. No. 32 at 7 n.1; Dkt. No. 32-10 at 7, 9-10, 23-24. Thus, Plaintiff's allegation in his complaint that his broken hand was ignored from May 8 to May 20, 2020, Dkt. No. 1 at 8-9 ¶ 22, is inaccurate.

---

[4] Unless otherwise noted, the Court's use of the term "Defendants" refers to Defendants Ssempebwa and Guillen.
[5] The following facts are not disputed unless otherwise stated.
[6] The undisputed factual record of the nursing care allegedly provided by deceased Defendant Nam Tran is included in the Statement of Facts, to provide a coherent narrative.

2

There are other instances in which Plaintiff's allegations flatly contradict his medical history and the declarations of his medical providers. Some of these contradictions have been reconciled by the parties; others have not.

As for the hand injury, it was ultimately determined that Plaintiff had fractured the lower part of his pinky finger. Dkt. No. 32-1 at 4 ¶ 12. Over the next six months, Plaintiff received care from several nurses and physicians as SVSP, as well as an off-site orthopedic surgeon. Id. at 3-7.

Plaintiff alleges that the Defendant nurses each failed to provide adequate pain medication in the days shortly after his injury. Dkt. No. 1 at 4-8. In this time frame, Plaintiff was simultaneously experiencing pain of withdrawal from a drug addiction, although the record contains contradictory evidence of whether and to what extent Plaintiff made this clear to his medical providers. Dkt. No. 1 at 9-10 ¶ 24 (complaint alleges Defendants humiliated Plaintiff for his drug addiction); Dkt. No. 32-6 at 17 (Plaintiff's May 22, 2020 request for health care services for pain from broken finger as well as drug withdrawal); Dkt. No. 32-10 at 13 (Plaintiff's deposition testimony that he did not specifically ask for medical intervention for drug withdrawal); Dkt. No. 32-11 at 6 (Plaintiff's grievance dated May 21, 2020 complained of inadequate pain medication for his broken finger and also drug withdrawal). The care and pain medication that each of the Defendants did or did not provide to Plaintiff must be seen in the comprehensive context of the ongoing medical care Plaintiff received.

### B.    Plaintiff's Medical History

Defendants' records of Plaintiff's medical history indicate he received medical care at SVSP twice on May 18, 2022. Dkt. No. 32-1 at 10-11. The first time, at about noon, Plaintiff was seen by a registered nurse who consulted with a physician (Dr. Paredes) who in turn ordered an X-ray of Plaintiff's hand. Id. at 3 ¶ 9; Dkt. No. 32-10 at 10-11; see also Dkt. No. 1 at 5-6 ¶ 16 (Plaintiff's complaint describing his first encounter with SVSP

nurse). The nurse addressed Plaintiff's pain by "utilizing nurse's protocol for Tylenol."[7] Dkt. No. 32-1 at 3 ¶ 9. Plaintiff has repeatedly alleged this nurse was Defendant Tran. Dkt. No. 1 at 5 ¶ 5 (complaint); Dkt. No. 32-10 at 11, 19, 20-21 (deposition testimony); Dkt. No. 43 at 2 (response to motion for summary judgment); see also Dkt. No. 32-11 at 6 (Plaintiff's grievance submitted May 21, 2020). However, Defendants have represented to the Court that, to the best of their knowledge, Defendant Tran died on October 7, 2019. Dkt. No. 25 at 1; Dkt. No. 25-1 at 2 ¶ 4. The medical records submitted by Defendants identify a nurse named Hanhthuc Huynh as the person who provided nursing care to Plaintiff on May 18, 2020. Dkt. No. 32-6 at 7, 15.

Plaintiff's medical records indicate that a physician (Dr. Kumar), ordered acetaminophen 650 mg for Plaintiff's pain, up to six doses per day. Dkt. No. 32-1 at 3 ¶ 9 (Dr. Bright's Declaration); Dkt. No. 32-6 at 7, 15 (Plaintiff's pharmacy and medication records show an order for medication entered on May 18, 2020 by Hanhthuc Huynh, RN for Responsible Provider, Kim Kumar, CME). This dosage appears to be somewhat higher than the 500 mg acetaminophen dosage in commercially available Tylenol. See https://www.tylenol.com/products/headache-muscle .

Consistent with Defendants' account of physician oversight, Plaintiff states that the nurse he saw on May 18, 2020 told Plaintiff she needed to call the doctor to see what needed to be done, left for a few minutes, and came back with information that he would receive an X-ray and Tylenol for pain. Dkt. No. 1 at 6 ¶ 16. Also according to Plaintiff, this nurse told him "'look, we are not fools, the doctor and I know that you broke your hand so that you can get drugs from us, I can believe that you drugs addicts would go this far to get a fix.'" Id. Plaintiff alleges he begged for help, and to be sent to the Correction

---

[7] The record before the Court refers to this medication by both its commercial name (Tylenol) and the two interchangeable names for its active ingredient (acetaminophen, also known as paracetamol). See https://en.wikipedia.org/wiki/Paracetamol ; https://www.ncbi.nlm.nih.gov/books/NBK482369/ . The Court will use the terms for the medication as they appear in the record but notes that they are one and the same medication.

4

Treatment Center. Id. The nurse replied "'all you're getting from me is Tylenol, go and find your fix somewhere e[ls]e.'" Id.

Plaintiff alleges he was in severe pain for the next couple of days. Id. at 6 ¶ 17. Plaintiff alleges that Defendants were deliberately indifferent to his actual medical needs, and they were humiliating him for his drug addiction instead of providing medical treatment for his broken hand. Id. at 9-10 ¶ 24.

According to his medical records, at about 7:25 p.m. on May 18, 2020 Plaintiff again asked for medical assistance and a Licensed Vocational Nurse (LVN) named Ramirez came to his cell to assess him. Dkt. No. 32-1 at 4 ¶ 10. Ramirez reported to Defendant Ssempebwa, who is a registered nurse, that Plaintiff had vital signs within normal range. Id. Defendant Ssempebwa determined that Dr. Paredes and Dr. Kumar had already assessed Plaintiff's pain and hand condition, and Plaintiff did not need emergency care. Id. Defendant Ssempebwa himself declares that at about 7:25 p.m. on May 18, 2020, LVN Ramirez responded to Plaintiff's man-down call, took Plaintiff's vital signs, assessed Plaintiff, and called Defendant Ssempebwa. Dkt. No. 32-2 at 4 ¶ 10. Plaintiff was "alert, oriented, and conscious with normal breathing, normal skin moisture and temperature, normal capillary refill, and normal radial pulse. [Plaintiff's] vital signs also showed within normal range." Id. at 4-5 ¶ 10. Defendant Ssempebwa determined that Plaintiff was not in medical emergency, and his "swollen right hand and associated pain was already addressed by physicians Paredes and Kumar with an order for x-rays and a prescription[] for pain-management medications." Id. at 5 ¶ 10.

Plaintiff alleges that at noon on May 19, 2020 he called "man down." Dkt. No. 1 at 7 ¶ 20. Plaintiff alleges Defendant Guillen responded and told Plaintiff: "They already saw you this morning and they didn't give you any drugs, what makes you think I am going to give you any?" Id. at 8 ¶ 20; see also Dkt. No. 32-10 at 24 (Plaintiff's deposition testimony that the encounter on May 19, 2020 was the only time he sought medical attention from Defendant Guillen). Plaintiff alleges he was still in severe pain. Dkt. No. 1 at 8 ¶ 20. Defendants do not have a record of this alleged interaction in Plaintiff's medical

5

history. See Dkt. No. 32-1 at 4. Defendant Guillen has submitted a Declaration in which he states he was assigned to work a different building on May 19, 2020, and furthermore does not recall this interaction with Plaintiff. Dkt. No. 32-3 at 4 ¶ 13. Defendant Guillen does not recall directing Plaintiff to take Tylenol, but nevertheless maintains that such a response would have been appropriate because Plaintiff's doctor was informed of a likely fracture and had already ordered an X-ray and pain medication. Id. There is no record of any other relevant care that Defendant Guillen provided to Plaintiff related to the broken finger, or pain medication for the broken finger. Dkt. No. 32-1 at 3-7; see also Dkt. No. 32-10 at 24 (Plaintiff's deposition testimony that he received no other medical treatment from Defendant Guillen). In his response to Defendants' motion for summary judgment, Plaintiff continues to maintain that the alleged encounter of May 19, 2020 happened as alleged in his complaint. Dkt. No. 43 at 2.

On May 20, 2020, an X-ray was taken. Dkt. No. 32-1 at 4 ¶ 12. The X-ray showed a comminuted (i.e., multiple) fracture at the lower part of Plaintiff's pinky finger. Id. Dr. Paredes made an urgent request for orthopedic surgery services, which was approved, and gave Plaintiff a 30-day prescription for a different pain medication (ibuprofen, also known as Motrin). Id. at 4-5 ¶ 12. Another nurse (Shiple) changed Plaintiff's splint and consulted with another physician (Dr. Lam) who ordered a one-time dose of Tylenol with codeine and continuation of other pain medications (Tylenol and Motrin). Id. at 5 ¶ 13. Plaintiff testified he was satisfied with the pain medication he received from the doctor on May 20, 2020. Dkt. No. 32-10 at 18.

On May 21, 2020, Dr. Paredes informed Plaintiff of the plan to have an orthopedic surgeon evaluate Plaintiff's injury. Dkt. No. 32-1 at 5 ¶ 14.

Plaintiff alleges that "three days after Plaintiff saw Defendant RN Nam," he called "man down" which is an urgent request for medical attention. Dkt. No. 1 at 6 ¶ 18. This would presumably have occurred on May 21, 2020 but the date as well as the event are in question. Plaintiff alleges Defendant Ssempebwa responded to Plaintiff's "man down," but did not take Plaintiff's vital signs or examine Plaintiff's hand. Id. at 6-7 ¶ 18. Plaintiff

6

alleges Defendant Ssempebwa said "'Oh, you are the guy who broke his hand on purpose[] to try and get med to get high? Yeah you ain't getting anything, go back to your cell.'" Id. at 7 ¶ 18. However, Plaintiff's medical history submitted by Defendants does not record any care provided by Defendant Ssempebwa on May 21, 2020. Dkt. No. 32-1 at 5. Nor does Defendant Ssempebwa's Declaration recount any care provided by him on May 21, 2020. Dkt. No. 32-2. It is plausible that Plaintiff's allegation may be a mis-dated, duplicative reference to the role Defendant Ssempebwa played in responding to Plaintiff's "man down" call the evening of May 18, 2020. Plaintiff appears to concede as much in his response to the motion for summary judgment, Dkt. No. 43 at 2, as well as his deposition testimony, Dkt. No. 32-10 at 21-22.

On May 22, 2020, Plaintiff submitted a Health Care Services Request Form in which he stated he was "in tremendous pain. Tylenol does not work plus I'm having withdrawals from her[oi]n. I need something for the pain its driving me crazy." Dkt. No. 32-6 at 17; Dkt. No. 32-1 at 5 ¶ 15. Defendant Ssempebwa reviewed the Request on May 23, 2020. Dkt. No. 32-6 at 17; Dkt. No. 32-1 at 5 ¶ 15; Dkt. No. 32-2 at 5 ¶ 15. An office technician scheduled Plaintiff for a face-to-face visit the next business day, May 26, 2020, but Plaintiff refused to see the nurse at the scheduled time. Dkt. No. 31-1 at 5 ¶ 15. There is no allegation nor record of any other relevant care that Defendant Ssempebwa provided to Plaintiff related to pain medication. Dkt. No. 32-1 at 3-7; Dkt. No. 32-2.

This concludes the record of relevant medical care provided by Defendants. Plaintiff continued to receive medical care from other providers for his broken finger, including pain medication. The Court summarizes the record of Plaintiff's continuing medical treatment for his broken finger, to provide overall context.

On June 3, 2020, Plaintiff was evaluated at San Joaquin General Hospital by an orthopedic surgeon (Dr. Dowbak) who determined that Plaintiff's finger was in a fairly good alignment, examined Plaintiff's X-ray, ordered a CT scan, gave Plaintiff another splint, ordered exercises, and prescribed another pain medication (Tramadol) for two weeks. Dkt. No. 32-1 at 5 ¶ 16. When Plaintiff returned to SVSP, another nurse evaluated

1    him and noted: (1) the plan of care was for Plaintiff to see his primary care provider within
2    5 days; and (2) Plaintiff had no actual or suspected pain. Id.
3          On June 8, 2020, Plaintiff had a telemedicine appointment with Dr. Paredas. Id. at
4    5 ¶ 18. Dr. Paredes ordered another pain medication (Mobic[8]) and advised Plaintiff to also
5    finish his previous pain prescription (tramadol). Id. Dr. Paredes made an urgent request
6    for another CAT scan, which was approved by Dr. Kumar. Id. at 6 ¶ 18. The CAT scan
7    was performed on June 18, 2020. Id. at 6 ¶ 19.
8          On September 30, 2020, Plaintiff was seen off-site by the orthopedic surgeon, Dr.
9    Dowbak. Id. at 6 ¶ 20. Dr. Dowbak ordered continued used of volar splint, exercises, and
10   pain medication (tramadol). Id. An SVSP nurse evaluated Plaintiff when he returned to
11   the prison. Id. at 6 ¶ 21. This nurse noted that Plaintiff had no actual or suspected pain. Id.
12         On October 6, 2020, Plaintiff had another telemedicine appointment with Dr.
13   Paredes. Id. at 6 ¶ 22. According to Dr. Paredes's notes, Plaintiff was in possession of
14   active medication to manage pain. Id.
15         On November 18, 2020, Plaintiff was seen off-site for a final time by Dr. Dowbak.
16   Id. at 6 ¶ 23. Dr. Dowbak prescribed Motrin. Id. at 7 ¶ 23. On his return to SVSP,
17   Plaintiff was seen by an SVSP nurse who noted that Plaintiff had no actual or suspected
18   pain. Id. at 7 ¶ 24.
19         On December 9, 2020, Plaintiff was seen by his primary care physician, Dr. Saravi
20   (apparently, no longer Dr. Paredes). Id. at 7 ¶ 26. Dr. Saravi assessed that Plaintiff's
21   finger had healed, Plaintiff had normal right hand function, and Plaintiff was cleared to
22   resume normal activities. Id.
23         **C.   Plaintiff's Medication Records**
24         Of relevance to Plaintiff's claims against Defendants, Plaintiff's medical history
25   includes records of three separate medications provided to him between May 18, 2020 to
26   June 19, 2020. Dkt. No. 32-6 at 13-15.

---

[8] This may be a mis-spelling of the Motrin medication Plaintiff was prescribed by Dr. Paredes. See Dkt. No. 32-1 at 5 ¶ 13.

8

The medication acetaminophen was first prescribed for Plaintiff on May 18, 2020. Id. at 15. The ordering physician was Kim Kumar, CME. Id. The prescription duration was 3 days. Id. The "Action Personnel" was Hanhthuc Huynh. Id.

The medication "acetaminophen-codeine (Tylenol with Codeine #3 oral tablet)" was prescribed for Plaintiff as a one-time, single dose, on May 20, 2020. Id. at 14. The ordering physician was Phuc Lam, P&S. Id. The prescription was entered by Kimberlee Carino, RN. Id.

The medication Ibuprofen (Motrin) was first prescribed for Plaintiff on May 20, 2020. Id. at 13. The ordering physician was Joseph Paredes P&S. Id. The prescription was to continue with a "Stop Date" of June 8, 2020. Id. The "Action Personnel" was Glenn Shiple, RN, and also Thanh Nguyen, Pharm. Id. On June 8, 2020, the prescription was extended to June 19, 2020 by Dr. Paredes. Id. The "Action Personnel" for this extended prescription was Joseph Paredes P&S. Id.

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue

9

at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A. Deliberate Indifference Standard

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature

of the defendant's response to that need.  See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled in part on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

### 1. Serious Medical Need

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment.  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

### 2. Deliberate Indifference

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  Id.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson, 290 F.3d at 1188.

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Additionally, the defendant's actions must be the cause of the injury suffered by the plaintiff.  Conn v. City of Reno, 591 F.3d 1081, 1098 (9th Cir. 2010), reinstated as modified by 658 F.3d 897 (9th Cir. 2011); see id. at 1098-1102 (reversing grant of summary judgment to transporting police officers where children of pre-trial detainee who committed suicide presented evidence that transporting police

officers (a) were subjectively aware the decedent was at acute risk of harm (suicide); (b) failed to respond properly to that risk by informing jail officials; and (c) such failure was both the actual and proximate cause of the decedent's suicide once at the jail).  A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, but the existence of serious harm tends to support an inmate's deliberate indifference claims, Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, 974 at 1060).

Once the prerequisites are met, it is up to the factfinder to determine whether deliberate indifference was exhibited by the defendant.  Such indifference may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care.  See McGuckin, 974 F.2d at 1062 (delay of seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to present colorable § 1983 claim).  Compare Lolli v. County of Orange, 351 F.3d 410, 420-21 (9th Cir. 2003) (applying subjective deliberate indifference test and holding that a jury could infer that correctional officers' failure to provide medical care in response to detainee's extreme behavior, sickly appearance and statements that he was diabetic and needed food demonstrated deliberate indifference); and Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (jury could find deliberate indifference where officials denied showers and medical attention to inmates who had been exposed to pepper-spray where officials themselves were coughing and gagging and stepped outside for fresh air, and the inmates made repeated requests for attention); with Peralta v. Dillard, 744 F.3d 1076, 1083-84 (9th Cir. 2014) (en banc) (jury can be instructed to consider whether medical official lacked necessary resources when determining if medical official was deliberately indifferent with respect to monetary damages).

The deliberate indifference standard does not require a showing that the prison official acted with an improper motive, such as an intent to harm; it is enough that the official acted or failed to act despite knowledge of a substantial risk of serious harm.

Edmo v. Corizon, 935 F.3d 757, 793 (9th Cir. 2019), reh'g en banc denied by 949 F.3d 489 (9th Cir. 2020) (prison doctor exhibited deliberate indifference when he knew of and disregarded an excessive risk to plaintiff's health by rejecting her request for GCS and then never re-evaluating his decision despite evidence that plaintiff continued to suffer clinically significant distress even though he provided other treatment to plaintiff).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. Toguchi, 391 F.3d at 1058. A prison medical officer without expertise in a specific field who denies an inmate appeal for medical care after it was reviewed by two qualified medical officials, does not demonstrate a wanton infliction of unnecessary pain. Peralta, 744 F.3d at 1086-87.

A failure to provide treatment because administrative reasons prevented a prisoner from being sent to a non-contracted facility would be a failure to provide treatment for non-medical reasons, which is sufficient to generate a genuine issue of material fact as to deliberate indifference on the part of the doctor failing to treat the patient. Jett, 439 F.3d 1097. In deciding whether there has been deliberate indifference to an inmate's serious medical needs, the court need not defer to the judgment of prison doctors or administrators. Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989). A prison medical officer without expertise in a specific field who denies an inmate appeal for medical care after it was reviewed by two qualified medical officials, does not demonstrate a wanton infliction of unnecessary pain. Peralta, 744 F.3d at 1086-87.

### B. Defendant Ssempebwa

Viewing the undisputed evidence in the light most favorable to Plaintiff, he has failed to demonstrate that Defendant Ssempebwa disregarded any of Plaintiff's serious

medical needs in the care he provided to Plaintiff. Defendant Ssempebwa: (1) received LVN Ramirez's report of Plaintiff's vital signs and physical condition the evening of May 18, 2020 and assessed that Plaintiff was not in a medical emergency and his pain medication had already been determined by physicians Paredes and Kumar, Dkt. No. 32-2 at 4-5 ¶ 10; (2) allegedly responded to another alleged "man down" call from Plaintiff on or about May 21, 2020 and allegedly denied additional pain medication because he did not want to provide anything for Plaintiff to "get high," Dkt. No. 1 at 7 ¶ 18; and (3) reviewed Plaintiff's Health Care Services Request Form on May 23, 2020, and which resulted in scheduling a face-to-face visit for May 26, 2020, at which time Plaintiff refused the visit. Dkt. No. 32-6 at 17; Dkt. No. 32-1 at 5 ¶ 15.

Defendants implicitly acknowledge that Plaintiff's broken finger was a serious medical need, for which Plaintiff received medical attention from numerous medical providers. Dkt. No. 32 at 14-16. Defendant Ssempebwa's role in providing that care to Plaintiff was somewhat limited relative to the overall effort. When Defendant Ssempebwa assessed Plaintiff's condition the evening of May 18, 2020, Plaintiff had already been evaluated by Dr. Paredes and Dr. Kumar. The physicians had already prescribed pain medication. Defendant Ssempebwa determined that Plaintiff was not in a medical emergency such as might justify further immediate action. At that point in time, there were no facts from which the inference of a substantial risk of serious harm could be drawn, cf. Farmer, 511 U.S. 837, because Plaintiff was not in a medical emergency and his pain medications had already been addressed by his physicians. Indeed, Plaintiff has failed to demonstrate that Defendant Ssempebwa, as a nurse, would have had authority to unilaterally change or override the pain medication prescribed by the two physicians. Plaintiff's medical history demonstrates that all his pain medications were prescribed by physicians, except that his nurses were apparently authorized to provide Tylenol. Dkt. No. 32-1 at 3 ¶ 9 (nurse addressed Plaintiff's pain by "utilizing nurse's protocol for Tylenol"); id. (Dr. Kumar ordered acetaminophen 650 mg on May 18, 2020); Dkt. No. 32-6 at 7, 15 (same); Dkt. No. 32-1 at 4-5 ¶ 12 (Dr. Paredes ordered ibuprofen on May 20, 2020); id. at

5 ¶ 13 (Dr. Lam ordered one-time dose of Tylenol with codeine on May 20, 2020); id. at 5 ¶ 16 (Dr. Dowbak ordered Tramadol on June 3, 2020); id. at 5 ¶ 18 (Dr. Paredes on June 8, 2020); id. at 6 ¶ 20 (Dr. Dowbak on September 30, 2020); id. at 7 ¶ 23 (Dr. Dowbak on November 18, 2020).

Lacking authority to prescribe a different pain medication, Defendant Ssempebwa cannot have caused Plaintiff's alleged injury of having inadequate pain medication. See Conn, 591 F.3d at 1098 (defendant's actions must be the cause of the injury suffered by plaintiff). Defendant Ssempebwa would have needed to consult with the physicians about the pain medication, had he determined that Plaintiff was in a medical emergency the evening of May 18, 2020. Such was not the case. Plaintiff was not in a state of medical emergency. Plaintiff was next seen by his physicians on May 20, 2020. His physicians adjusted Plaintiff's pain medications at that time. Plaintiff's disagreement with the nursing care provided by Defendant Ssempebwa on May 18, 2020 does not give rise to a § 1983 claim. Franklin, 662 F.2d at 1344.

Plaintiff's allegations about Defendant Ssempebwa's alleged response to Plaintiff's "man down" call on or about May 21, 2020, might actually be referring to the same event of May 18, 2020, since Defendant Ssempebwa does not recall a separate event on or about May 21, 2020 and since Plaintiff's medical history does not recite such an event. Plaintiff himself seems to have conceded as much in his response to the motion for summary judgment, Dkt. No. 43 at 2, as well as his deposition testimony, Dkt. No. 32-10 at 21-22.

Even if the Court presumes that Defendant Ssempebwa responded to another "man down" call on May 21, 2020, Plaintiff's medical history shows that Plaintiff's pain medication had been adjusted by his physicians as of May 20, 2020. Once again, Defendant Ssempebwa would not have had authority to change or override the physicians' prescriptions, nor any clear basis to recommend further changes. This allegation, alone or in combination with the previous allegation, does not give rise to a § 1983 claim. Franklin, 662 F.2d at 1344.

Finally, Defendant Ssempebwa's review of Plaintiff's Health Care Services Request Form on May 23, 2020 does not give rise to any § 1983 claim. Nothing in the record indicates that Defendant Ssempebwa's review resulted in any harm to Plaintiff. McGuckin, 974 F.2d at 1060. Plaintiff himself refused the nursing visit that was scheduled to occur on May 26, 2020.

There is no evidence Defendant Ssempebwa made decisions that were likely to increase the risk of serious harm to Plaintiff, let alone that he *knew* he was increasing such a risk. Plaintiff has also failed to demonstrate that Defendant Ssempebwa's actions caused a substantial risk of serious harm to Plaintiff. There is no evidence Defendant Ssempebwa could have provided - or even had authority to provide - different pain medication that would actually have better addressed Plaintiff's pain. There is also no evidence that Plaintiff's asserted harms were sufficiently serious to implicate the Eighth Amendment. Consequently, there is no triable factual issue from which a reasonable fact-finder could conclude that Defendant Ssempebwa knowingly disregarded a substantial risk of serious harm to Plaintiff in any of the care he provided to Plaintiff. Conn, 591 F.3d at 1098; Franklin, 662 F.2d at 1344.

Viewing the record before the Court in the light most favorable to Plaintiff, he has not shown a triable issue on the merits of his claim that Defendant Ssempebwa failed to provide adequate pain medication in the course of providing nursing care to Plaintiff. Keenan, 91 F.3d at 1279. Plaintiff has failed to show a genuine issue of material fact for trial. Defendants' motion for summary judgment on Plaintiff's claim against Defendant Ssempebwa will be GRANTED.

### C. **Defendant Guillen**

Viewing the undisputed evidence in the light most favorable to Plaintiff, he has failed to demonstrate that Defendant Guillen disregarded any of Plaintiff's serious medical needs in the care he allegedly provided to Plaintiff. Plaintiff's allegations against Defendant Guillen solely relate to Defendant Guillen's alleged response to a "man down" call from Plaintiff on May 19, 2020. Dkt. No. 1 at 7-8 ¶ 20. Defendant Guillen does not

16

recall this alleged event, was assigned to a different building that day, and the event is not described in Plaintiff's medical history. Dkt. No. 32-3 at 4 ¶ 13. Even if the Court presumes that the interaction occurred as alleged by Plaintiff on May 19, 2020, Defendant Guillen declares that the response allegedly provided to Plaintiff would have been appropriate because Plaintiff's physicians had already prescribed pain medication. Dkt. No. 32-3 at 4 ¶ 13. Plaintiff has failed to show that Defendant Guillen was the cause of any actual harm to Plaintiff, even if Defendant Guillen really did respond to a "man down" call on May 19, 2020 as alleged by Plaintiff. See Conn, 591 F.3d at 1098; McGuckin, 974 F.2d at 1060.

Plaintiff has failed to come forward with significantly probative evidence sufficient to convince a reasonable fact-finder that Plaintiff's alleged May 19, 2020 encounter with Defendant Guillen even happened. See Keenan, 91 F.3d at 1279. Any legal analysis of Defendant Guillen's alleged deliberate indifference during the apparently-imagined encounter of May 19, 2020, would be purely speculative and pointless.

There is no significantly probative evidence in this record that Defendant Guillen made any decisions that were likely to increase the risk of serious harm to Plaintiff, let alone that he *knew* he was increasing such a risk. As with Defendant Ssempebwa, there is no evidence that Defendant Guillen could have provided different pain medication that would actually have better addressed Plaintiff's pain. There is also no evidence that Plaintiff's asserted harms were sufficiently serious to implicate the Eighth Amendment. Consequently, there is no triable factual issue from which a reasonable fact-finder could conclude that Defendant Guillen knowingly disregarded a substantial risk of serious harm to Plaintiff. Conn, 591 F.3d at 1098; Franklin, 662 F.2d at 1344.

Viewing the record before the Court in the light most favorable to Plaintiff, he has not shown a triable issue on the merits of his claim that Defendant Guillen failed to provide adequate pain medication in the course of providing nursing care to Plaintiff. Keenan, 91 F.3d at 1279. Plaintiff has failed to show a genuine issue of material fact for

trial. Defendants' motion for summary judgment on Plaintiff's claim against Defendant Guillen will be GRANTED.

### D. Remaining Defenses

Defendants assert in the alternative that they are entitled to qualified immunity from liability for civil damages. Dkt. No. 32 at 17-18. Because the Court will grant summary judgment on Plaintiff's Eighth Amendment claims against each of the Defendants on other grounds as discussed above, the Court does not reach Defendants' qualified immunity argument. For the same reason, the Court need not reach Defendants' alternative argument that the Eleventh Amendment bars official-capacity claims for damages against them. Dkt. No. 32 at 18.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is **GRANTED**. Dkt. No. 32. Plaintiff's claims against Defendants Ssempebwa and Guillen are DISMISSED with prejudice.

The Clerk shall enter judgment and close the file.

This order terminates Docket No. 32.

**IT IS SO ORDERED.**

Dated: May 11, 2023

EDWARD J. DAVILA
United States District Judge